# Illinois Official Reports

## Appellate Court

---

**_Mack v. Viking Ski Shop, Inc._, 2014 IL App (1st) 130768**

---

| | |
|---|---|
| Appellate Court Caption | MATTHEW MACK, Plaintiff-Appellant, v. VIKING SKI SHOP, INC., an Illinois Corporation, Defendant-Appellee (SALOMON NORTH AMERICA, INC., a Delaware Corporation, Defendant). |
| District & No. | First District, Third Division<br>Docket No. 1-13-0768 |
| Filed | September 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the entry of summary judgment for defendant ski shop in an action alleging that defendant's negligence in setting the binding on plaintiff's skis too high for his ability level led to his knee injury, the appellate court affirmed the trial court's decision, since the testimony of the orthopedic surgeon who operated on plaintiff's knee, who also had a degree in biomechanical engineering, did not establish a causal link between plaintiff's injury and the failure of his bindings to release to any degree of medical certainty, especially when he testified that he was not an expert on causation with respect to injuries related to ski bindings, and plaintiff did not rebut the testimony of defendant's expert that a lower setting on the bindings would not have prevented the injury; therefore, no genuine issue of material fact was presented. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-11817; the Hon. Lynn M. Egan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | James J. Morici, Jr., and Michael G. Miller, both of Morici, Figlioli & Associates, of Chicago, for appellant. |
|---|---|
| | Robert Marc Chemers, Edward H. Nielsen, Scott L. Howie, and Belle L. Katubig, all of Pretzel & Stouffer, Chtrd., of Chicago, and Peter W. Rietz and Brian A. Birenbach, both of Rietz Law Firm, of Dillon, Colorado, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Epstein concurred in the judgment and opinion. |

## OPINION

¶ 1      This interlocutory appeal arises from the trial court's order granting summary judgment in a negligence action to defendant Viking Ski Shop, Inc. On appeal, plaintiff Matthew Mack contends that the trial court erroneously granted defendant's motion for summary judgment as to plaintiff's negligence claim because a genuine issue of material fact existed regarding the element of proximate cause. Specifically, plaintiff contends that defendant set plaintiff's ski bindings too high for his ability level, and as a result, his bindings failed to release, causing his knee injury. We affirm.

¶ 2                                    BACKGROUND

¶ 3      This case arises from injuries sustained in a ski accident in Steamboat Springs, Colorado. Plaintiff fell approximately halfway down an intermediate ski run and sustained a severe knee fracture of his left tibial plateau. Plaintiff purchased the skis and ski bindings used at the time of injury from defendant. Plaintiff commenced this action in November 2006, alleging negligence against defendant and third-party Salomon North America (Salomon). Plaintiff alleged, in pertinent part, that defendant failed to make a reasonable inspection before selling the ski equipment to plaintiff. In addition, defendant failed to properly adjust the ski equipment, specifically the bindings, to plaintiff's height, weight, and ski type. Generally, in the ski industry, skiers are classified as type I (beginner), type II (intermediate), or type III (advanced).

¶ 4      Several depositions were taken during discovery. Plaintiff testified that in November 2004, he purchased new skis, boots, and bindings from defendant based on his size and ability. He told defendant's sales representative that he was an intermediate to advanced skier. On March 10, 2010, plaintiff traveled to Steamboat Springs, Colorado, where he had skied numerous times. On the day of the incident, he had one or two beers at lunch, and then resumed skiing. Approximately halfway down the Vagabond ski run, plaintiff was initiating a left turn when his right ski crossed over his left ski, causing him to fall on his back. He did not recall if any ski released from the binding. Believing his leg was broken, he radioed his ski companion Jody to call the ski patrol. Glenn Jones, a ski patroller, splinted plaintiff's injured leg and used a toboggan to transport him off the mountain. The ski patrol immediately transferred plaintiff to the Yampa Valley Medical Center, where Henry F. Fabian, M.D., an orthopedic surgeon,

operated on plaintiff. He remained hospitalized for 12 days and then resumed postoperative care in Chicago. Since the incident, plaintiff has endured five or six hospitalizations, due to infection, as well as extensive physical therapy.

¶ 5        Peter R. Leffe, plaintiff's mechanical engineering expert, testified that in his opinion, plaintiff was a type II or intermediate skier. Leffe also inspected plaintiff's ski equipment using the standard industry Salomon manual and found that plaintiff's bindings were set too high for a type II skier. Thus, Leffe concluded that defendant's fitting of plaintiff's ski equipment fell below the standard of care for a ski shop. Leffe noted that he had no intention to testify about the causal relationship between the subject injury and the binding functions because he did not hold himself out to be a biomechanical engineer.

¶ 6        Defendant also submitted an affidavit of its engineering expert Jasper Shealy, who inspected and tested plaintiff's ski equipment. He attested that over the course of his career he studied and conducted research on the relation between ski binding function and knee injuries. Based on defendant's records, plaintiff selected a type III skier preference and his bindings were adjusted accordingly. Plaintiff, however, contends that he selected a type II skier preference. Despite this discrepancy, Shealy concluded that a lower ski type setting would not have prevented plaintiff's injury because plaintiff's bindings were not designed to protect against tibial plateau fractures. He stated with a reasonable degree of engineering certainty that the valgus/varus bending forces that cause tibial plateau fractures were not sufficient to cause a binding to release at any setting. Therefore, a lower setting of plaintiff's bindings would not have prevented his knee injury.

¶ 7        In April 2010, defendant filed a motion for summary judgment arguing that plaintiff failed to establish that his ski bindings' setting was the proximate cause of his knee injury. In plaintiff's response, he attached an affidavit by Leffe addressing the issue of causation, even though plaintiff failed to make this disclosure in Leffe's Rule 213(f) (Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007)) interrogatories or discovery deposition. After further briefing, the trial court granted defendant's motion, finding that plaintiff's claims were conclusory and speculative.

¶ 8        Following this ruling, two more discovery depositions were taken. Jones, a part-time ski patroller for 23 years in Steamboat Springs, Colorado, testified that when he arrived on the scene, he physically released plaintiff's left ski binding from his injured leg. Jones then aligned the injured leg and splinted it before placing plaintiff on a toboggan. The incident report indicated that plaintiff was an advanced skier, who caught his left ski tip in a slush pile.

¶ 9        In addition, Dr. Fabian testified that beyond being an orthopedic surgeon, he held a biomechanical engineering degree and was a team doctor for the United States ski team. Plaintiff sustained a severe knee injury, specifically a grade six comminuted fracture of the tibial plateau. Dr. Fabian recalled the injury being one of the worst fractures he had ever seen. He noted that generally ski bindings did not prevent knee injuries because, from an engineering standpoint, the forces that were at the knee would not do anything to release the toe or heel of the binding until a certain force was reached. Although based on plaintiff's fracture pattern, the supposed speed, and location on the mountain, "it would be very likely that bindings set too high were consistent with [plaintiff's] injury."

¶ 10        Thus, in October 2010, plaintiff filed a motion to reconsider the court's summary judgment ruling, and in February 2011, the trial court granted the motion. The court concluded that, based upon the new deposition testimony of Jones and Dr. Fabian, there was a genuine issue of

material fact as to whether the left ski binding did or did not release and, therefore, whether the alleged negligence on the part of defendant was the proximate cause of plaintiff's injury.

¶ 11   In March 2011, defendant filed a motion to bar plaintiff's expert Leffe from testifying at trial on issues of causation. The court granted the motion, noting that plaintiff failed to disclose this line of testimony in his Rule 213 disclosures. In addition, during Leffe's discovery deposition, he testified that he did not intend to be an expert in the causal relationship between plaintiff's injury and the binding function. Therefore, the court concluded Leffe's new opinions would be prejudicial to defendant and were barred pursuant to Rule 213. See Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007).

¶ 12   In January 2012, defendant then filed a renewed motion for summary judgment including a motion *in limine* to bar Leffe's testimony at trial on issues of causation. Defendant also attached a subsequent evidence deposition of Dr. Fabian, who testified that plaintiff's injury "could be and also could not be" consistent with a ski binding that did not release. Dr. Fabian noted that if plaintiff's binding was set too high and did not release, "it could contribute" to the fracture, but he also observed that this type of fracture could be obtained with an "optimally functioning binding." Thus, Dr. Fabian could not say with any degree of medical certainty whether plaintiff's injuries were caused or not caused by the ski bindings. Further, he testified that he was not an expert on issues of causation with respect to knee injuries and ski bindings.

¶ 13   In October 2012, the trial court granted defendant's motion for summary judgment, concluding that "the record before us [was] devoid of any affirmative and positive evidence that would create a question of fact regarding proximate cause." The court also observed that in regards to Leffe's barred testimony, plaintiff's response brief failed to provide any substantive argument in support of a generic request to "vacate all previous orders regarding evidentiary matters." Accordingly, it constituted waiver of this contention. Plaintiff now appeals.

¶ 14                                                    ANALYSIS

¶ 15   Plaintiff contends that the trial court erroneously granted defendant's motion for summary judgment with regard to plaintiff's negligence claim because a genuine issue of material fact existed regarding the element of proximate cause. Summary judgment is proper where the pleadings, admissions, depositions and affidavits demonstrate there is no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); 735 ILCS 5/2-1005 (West 2010). In determining whether a genuine issue of material fact exists, the court must consider such items strictly against the movant and liberally in favor of its opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review the trial court's order granting summary judgment *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

¶ 16   In order to recover damages based upon a defendant's alleged negligence, a plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached the duty; and (3) that the breach was the proximate cause of the plaintiff's injuries. *Perfetti v. Marion County*, 2013 IL App (5th) 110489, ¶ 16.

¶ 17   Plaintiff first contends that the trial court erred by barring Leffe's testimony on proximate cause. Initially, we note that plaintiff fails to cite to any relevant authority or develop his argument on this matter in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013). See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 208 (2007). This court is entitled to clearly defined issues, cohesive legal arguments and citations to relevant

authority. *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 254-55 (2009). Accordingly, plaintiff has forfeited his contention on appeal. See *TruServ Corp. v. Ernst & Young LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 18    Setting forfeiture aside, the purpose of discovery rules, governing the timely disclosure of expert witnesses, "is to avoid surprise and to discourage strategic gamesmanship" amongst the parties. (Internal quotation marks omitted.) *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 92. As a result, Rule 213(g) states as follows:

> "The information disclosed in answer to a Rule 213(f) interrogatory, or in a discovery deposition, limits the testimony that can be given by a witness on direct examination at trial. Information disclosed in a discovery deposition need not be later specifically identified in a Rule 213(f) answer, but, upon objection at trial, the burden is on the proponent of the witness to prove the information was provided in a Rule 213(f) answer or in the discovery deposition. Except upon a showing of good cause, information in an evidence deposition not previously disclosed in a Rule 213(f) interrogatory answer or in a discovery deposition shall not be admissible upon objection at trial." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007).

Pursuant to the rule, the decision of whether to admit or exclude evidence, including whether to allow an expert to present certain opinions, rests solely within the discretion of the trial court and will not be disturbed absent a demonstrated abuse of discretion. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 36-37 (2010). Such an abuse of discretion occurs only if no reasonable person would take the view adopted by the trial court. *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005).

¶ 19    Here, plaintiff did not disclose Leffe's intention to testify regarding proximate cause in his Rule 213(f) interrogatory. In addition, in Leffe's discovery deposition, he testified that he had no intention to testify about the causal relationship between the subject injury and the binding functions because he did not hold himself out to be a biomechanical engineer. Moreover, plaintiff provided no explanation or showing of good cause below or on appeal for his failure to disclose Leffe's opinions on causation. In granting the motion, the trial court specifically noted its concern of unfair prejudice to defendant because defense counsel was unable to question Leffe regarding his "opinions" on the matter, "qualification to offer such opinions," or "the factual, scientific, or technical basis for his opinions." Therefore, we cannot say that the trial court abused its discretion in this matter.

¶ 20    We now turn to whether a genuine issue of material fact exists regarding the element of proximate cause. In order to establish proximate cause, a plaintiff must establish both "cause in fact" and "legal cause." *Rivera v. Garcia*, 401 Ill. App. 3d 602, 610 (2010). Cause in fact is established if the occurrence would not have happened "but for" the conduct of the defendant. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 1007 (2005). Legal cause, by contrast, is largely a question of foreseeability, and the relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*, 2014 IL App (1st) 130269, ¶ 37. Furthermore, proximate cause must be established to a reasonable certainty and may not be based upon mere speculation, guess, surmise or conjecture. *Bourgonje*, 362 Ill. App. 3d at 1007. Because this case hinges on cause in fact, we need not consider legal cause. See *Salinas v. Werton*, 161 Ill. App. 3d 510, 515 (1987).

¶ 21    In the case *sub judice*, the inference plaintiff seeks to establish is that defendant's failure to properly set his ski bindings to plaintiff's weight, height, and intermediate ability level prevented his ski bindings from properly releasing which directly caused his knee injury. This inference, while facially appealing, finds no support in the record. Dr. Fabian's testimony as a whole fails to definitively establish, to any degree of medical certainty, a causal link between plaintiff's bindings' failure to release and his knee injury. In fact, Dr. Fabian testified that he was not an expert on the issues of causation with respect to injuries relating to ski bindings, and at best, the failure of plaintiff's bindings to release "could be and also could not be" the proximate cause of plaintiff's injury. Accordingly, Dr. Fabian's testimony is speculative and not enough to withstand dismissal on summary judgment. See *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 843 (2010) (an expert's opinion was only as valid as the basis for the opinion and conclusory opinions based on sheer, unsubstantiated speculation were not enough to survive the summary judgment stage); *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 299 (2008) (at the summary judgment stage, the plaintiff must present affirmative evidence that the defendant's negligence was a proximate cause of the plaintiff's injuries, and the mere possibility of a causal connection was not sufficient to sustain the burden of proof).

¶ 22    In addition, even if we take Leffe's testimony as true that defendant incorrectly set plaintiff's bindings too high for his skier preference, plaintiff still fails to provide substantial evidence that if his bindings were at a lower setting his injury would not have occurred. Plaintiff and ski patroller Jones did not testify regarding the element of proximate cause, and Dr. Fabian's testimony was demonstrably equivocal. See *Salinas*, 161 Ill. App. 3d at 515 (although a plaintiff may rely on reasonable inferences that may be drawn from the facts considered on a motion for summary judgment, the circumstances must justify an inference of probability as distinguished from mere possibility). Furthermore, plaintiff has presented no additional evidence to rebut defense expert Shealy, who concluded, with a reasonable degree of engineering certainty, that a lower binding setting would not have prevented plaintiff's knee injury because plaintiff's bindings were not designed to protect against tibial plateau fractures. Consequently, plaintiff fails to establish that *but for* defendant's negligence in setting his ski bindings too high, plaintiff's injury would not have occurred. See *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004) (a defendant's conduct was only a material element and substantial factor in bringing about the injury if, absent that conduct, the injury would not have occurred).

¶ 23    Moreover, plaintiff's reliance on cases addressing the admissibility of expert testimony is misplaced, as defendant does not dispute that Dr. Fabian's expert opinion regarding causation would be admissible at trial. See *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20 (2008); *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964 (1998); *Geers v. Brichta*, 248 Ill. App. 3d 398 (1993); *Mesick v. Johnson*, 141 Ill. App. 3d 195 (1986). Here, no reasonable inferences can be drawn to establish that but for defendant's negligence the incident would not have occurred. See *McCraw v. Cegielski*, 287 Ill. App. 3d 871, 873 (1996). Because the record presents no genuine issue of material fact, defendant was entitled to summary judgment as a matter of law.

¶ 24                                                    CONCLUSION

¶ 25    Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.